SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RICHARD J. SIMMONS, Cal. Bar No. 72666
DANIEL J. McQUEEN, Cal. Bar No. 217498
LINDSAY M. HOLLOMAN, Cal. Bar No. 271266
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
KEAHN N. MORRIS, Cal. Bar No. 273013
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947

Attorneys for Respondent
DIGNITY HEALTH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA FLORES, an individual,<br><br>    Petitioner,<br><br>v.<br><br>DIGNITY HEALTH, a California corporation; and DOES 1 through 5, Inclusive,<br><br>    Respondents. | Case No. 2:18-02471-R-PLA<br><br>**NOTICE OF RELATED CASE**<br><br>Pursuant to L.R. 83-1.3<br><br>[Complaint filed: February 2, 2018] |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PETITIONER AND HER COUNSEL OF RECORD:

    Pursuant to Local Rule 83-1.3 and consistent with the denotation in the Civil Cover Sheet filed with Respondent's Notice of Removal, Respondent Dignity

Health hereby files this Notice of Related Case. The following case not only arises from the same related transaction, happening or event, but also calls for a determination of the same or substantially related or similar questions of law and fact and would entail substantial duplication of labor if not heard by the same judge.

1. <u>Veronica Flores v. Dignity Health</u>, United States Central District of California Case No. 2:18-cv-02464-JFW-AGR. A copy of Petitioner and Plaintiff Veronica Flores' Complaint, filed in Ventura County Superior Court, Case No. 56-2018-00507606-CU-WT-VTA, is attached hereto as **Exhibit A**. At issue is whether Flores' state court retaliation and wrongful termination claims, for which Dignity Health contends the statute of limitations has expired, were tolled as the result of a grievance initiated pursuant to a collective bargaining agreement (CBA). The Service Employees International Union Local 121 ("SEIU") initiated a grievance with Dignity Health disputing Flores' termination.

Considering the identical issues raised by both matters regarding the interpretation of the CBA as it pertains to the arbitration of Flores' termination, it is respectfully submitted that both matters are related and should be heard by the same judicial officer, to prevent duplication of efforts involved in becoming familiar with the issues of law and fact presented, and prevent inconsistent rulings.

Dated: March 30, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     /s/ Daniel J. McQueen
RICHARD J. SIMMONS
DANIEL J. McQUEEN
LINDSAY M. HOLLOMAN
KEAHN N. MORRIS
Attorneys for Respondent
DIGNITY HEALTH

-1-

# EXHIBIT A

SMRH:485800520.1    NOTICE OF RELATED CASE

RECEIVED FOR SCANNING
VENTURA SUPERIOR COURT
FEB 02 2018

Filed 2/2/2018

VIA FAX

Samuel F. Galici, Esq. (102496)
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Phone: (805) 654-1451
Facsimile: (805) 654-1453
Email: sgalici@employeelawyers.net

Attorney for Plaintiff VERONICA FLORES

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF VENTURA

| | |
|---|---|
| VERONICA FLORES, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DIGNITY HEALTH, a California corporation, and DOES 1 through 50, Inclusive,<br><br>Defendants, | Case No. 56-2018 00507606-CU-WT-VTA<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR**<br><br>1. **RETALIATION FOR WHISTLEBLOWING**<br>[Health & Safety Code §1278.5]<br><br>2. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff VERONICA FLORES (hereinafter "Plaintiff") complains and alleges as follows:

### VENUE

1. Venue is proper in this Court pursuant to Civil Code §395(a) because all of the unlawful practices alleged herein were committed in this county, the records relevant to the unlawful practices alleged herein are maintained, and Defendant DIGNITY HEALTH is situated in this county.

//
//

Page 1 of 11
COMPLAINT

## PARTIES

2. Plaintiff VERONICA FLORES is an individual, residing in the County of Ventura, State of California.

3. Defendant DIGNITY HEALTH is, and at all relevant times herein mentioned was, a California corporation duly organized and existing under and by virtue of the laws of the State of California. DIGNITY HEALTH principal place of business is in the County of Ventura, State of California.

4. The true names and capacities, whether individual, associate, or otherwise, of DOES 1 through 50 are unknown to Plaintiff, who therefore sues such fictitiously-named Defendants by such fictitious names. Plaintiff is informed and believes and thereon allege that each of the fictitiously-named Defendants is in some manner responsible for, and that Plaintiff's damages were proximately caused by, such Defendant's acts or failures to act. Plaintiff will amend this complaint when their identities have been ascertained.

5. Plaintiff is informed and believes, and based thereon alleges, that all Defendants, were, at all times herein mentioned, and now are, the agents, servants and employees of each of the other Defendants herein, and were at all such times acting within the course and scope of such agency and employment with the consent and permission of each of the other Co-Defendants, and each of the Defendants named herein ratified each of the acts of the other Co-Defendants.

6. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and severally.

7. Whenever and wherever reference is made to individuals who are not named as Plaintiff or Defendant in this Complaint but who were employees/agents of Defendant DIGNITY HEALTH, such individuals at all relevant times acted on behalf of Defendant DIGNITY HEALTH within the scope of their employment.

//
//

### Equitable Tolling

8. On or about April 24, 2015, Service Employees International Union Local 21 (SEIU) initiated on Plaintiff's behalf a grievance pursuant to the collective bargaining agreement with Defendant DIGNITY HEALTH in force for the period from July 2, 2012 to June 30, 2015 (CBA) for unjust termination of her employment on or about April 9, 2015.

9. Pursuant to the arbitration provision in the CBA, the parties submitted the dispute to Sara Adler, an arbitrator duly selected and appointed.

10. An arbitration proceeding was duly conducted, and on August 7, 2017, the arbitrator made an award in favor of Petitioner together with an opinion, finding, *inter alia*, that Defendant DIGNITY HEALTH did not have just cause to terminate Plaintiff's employment and ordered Defendant *(a)* to reinstate Plaintiff effective April 9, 2015 if an evaluation by a mutually agreed drug treatment specialist in consultation with the Employee Health Department determines that she is able to work unimpaired by her medications, thereby awarding back pay for the period since Plaintiff's termination and *(b)* to conform its records to the findings in the arbitrator's decision.

11. In pursuing the arbitration forum, Plaintiff exercised good faith and reasonable conduct in pursuing an alternative remedy under the principles of equitable estoppel to suspend the running of time on the statutes of limitation of Plaintiff's claims under the First and Second Causes of Action herein.

### First Cause of Action
### RETALIATION FOR WHISTLEBLOWING
[Health & Safety Code §1278.5]

12. Plaintiff realleges hereby incorporates by reference the foregoing paragraphs 1 through 11 as though fully set forth.

13. Beginning on or about October 17, 1994, Plaintiff was employed by Defendant DIGNITY HEALTH as a registered nurse at the Saint John's Regional Medical Center ("SJRMC") in Oxnard, California.

14. At all times herein mentioned, Plaintiff was employed by Defendant DIGNITY HEALTH pursuant to oral and written employment contracts. One of those agreements is the CBA.

15. During her employment, Plaintiff was repeatedly required to work with insufficient staff, which insufficiency violated the legally mandated ratio of nurses to patients, which short staffing was a patient safety violation.

16. Plaintiff repeatedly complained of insufficient staffing for the number of patients. In February 2014, and on many other occasions, Plaintiff competed and submitted to Defendant DIGNITH HEALTY an "Assignment Dispute Objection" form for Defendants' violation of safe patient nurse ratios. These forms were created by the SEIU, of which Plaintiff is and at all relevant times is and was a member. Patient ratios required by California law are a 1 to 1 ratio between nurse and patient in "5150" patient suicide-concerns situations and frequently the ratio has instead been 2 or 3 patients per nurse. These forms are put in the hospital mailboxes of the Nursing Supervisor, the director of the affected department and to Chris Slane of the SEIU. The forms are also faxed to the State Department of Health Services, Board of Registered Nursing, Board of Vocational Nursing and Psychiatric Technicians, and Cal-OSHA.

17. After Plaintiff had reported the February 2014 incident, the Director of Public Health conducted an investigation into the allegations. As a result of Plaintiff's safety complaints, Defendant DIGNITY HEALTH retaliated against her.

18. Plaintiff was forced to endure continued harassment over an extended period in retaliation for her assertion of rights under the Health and Safety Code with respect to safety.

19. On April 1, 2014, at approximately 7:00 A.M., Charge Nurse Paul Wilcox asked Plaintiff to act as "preceptor" (trainer) for a traveling nurse who needed to be oriented to the operations of the ER floor. Wilcox said the nurse was a very skilled ER nurse with UCU experience, but that she would need orienting to the department. Plaintiff agreed. Plaintiff showed the nurse the department, where the supplies are kept, the routines of charting, and how ER receives patients and orders and told her she would be available and would shadow her, but not the entire time, because it appeared that she knew what she was doing and was following the

1 instructions given to her. Plaintiff said if she needed anything, the nurse could ask for Plaintiff
2 at the nurse's station. Plaintiff also told her she could ask questions of other nurses and the
3 Charge Nurse if Plaintiff was not available.

4     20. In the mid-morning of April 1, 2014, Plaintiff's direct supervisor, Sherry
5 Sterling, approached Plaintiff in the hallway outside of a patient's room and told her that she
6 needed Plaintiff's Mandatory Nursing Review ("MNR"), which must be completed by nurses
7 yearly. Plaintiff had completed her last MNR in October 2013 and it was valid for one year
8 from that date. Plaintiff advised Sterling that she had already completed her MNR and that she
9 was busy at that time. Sterling said she did not have the MNR and Plaintiff must complete it and
10 if she did not do so, Sterling would suspend her.

11     21. At that time, Plaintiff had four patients, one of whom was in critical condition.
12 On April 1, 2014, approximately 2 to 3 hours later, Sterling again told Plaintiff to complete the
13 MNR or she would be suspended. Plaintiff said she would be able to talk further about it after
14 the end of her shift, which was at 7:00 P.M., and Sterling walked away.

15     22. At approximately 6:00 P.M., Sterling approached Plaintiff at the nurses' station
16 with several other nurses present, and told Plaintiff she had not found her MNR and again told
17 Plaintiff to complete it. Plaintiff replied that there was a list of MNRs posted in the restroom in
18 the past and her name was crossed off on it, showing that she had completed it. Again, Plaintiff
19 said she was busy with patient care, and Sterling walked away.

20     23. Approximately fifteen minutes later, Debbie Gaultieri, Nurse Supervisor,
21 approached Plaintiff at the nurse's station, with several other nurses present. Gaultieri instructed
22 Plaintiff to report to Sterling's office to talk. Plaintiff asked if this was going to lead to any
23 disciplinary action or something else for which she needed a union steward. Gaultieri falsely
24 told her she did not need a union steward present. Plaintiff then requested to have a third party
25 present. Gaultieri agreed and another nurse was brought in to the meeting. Gaultieri then told
26 Plaintiff that other nurses have reported "patient care concerns" and Plaintiff was going to be
27 subjected to a drug test. Plaintiff said she needed to reach Julia Arceo, her SEIU steward, right
28 away. Gaultieri left the office and telephoned Arceo. When Arceo arrived, Plaintiff spoke with

her briefly outside of the room, telling her that Sterling had been harassing her all day about the MNR and that she was told she would be given a drug test.

24. When Plaintiff and Arceo returned to Sterling's office, Gaultieri asked Plaintiff if she had taken any medication that day. Plaintiff replied that she had not. She then told Gaultieri at her request the medications she took the previous night and when she took them. Gaultieri asked why she took the medications and Plaintiff replied it was for her neck injuries she suffered in 2007 and 2010. She also said she had a lot of documentation that still needed to be done concerning patient care she had provided during that day, and that charting still was not finished nor was documenting vitals. Sterling instructed Plaintiff not to finish her documentation and asked her to sign a drug test consent form she had just completed as well as a "Supervisor's Reasonable Suspicion Report". Plaintiff said she would only sign the consent form. Gaultieri then informed Plaintiff that she was immediately suspended and while on suspension she was not permitted to be on the hospital campus unless it was for medical attention. She did not state how long the suspension would last. Gaultieri then contacted security to escort Plaintiff. At no time was Plaintiff informed of the "patient care concerns" that were the basis for this demand for a drug test.

25. At that point in time, Plaintiff was taken by security to U.S. Healthworks in Oxnard and went through the drug test. Security then would not permit Plaintiff to get her belongings from the break room or the locker room, only her makeup bag she had stored in the nurses' station. She then telephoned her husband to pick her up.

26. On or about April 7, 2014, Plaintiff inquired of Kathy Trugero, Employee Health Director at SJRMC, and was told the result of the drug test had not been received. Plaintiff then contacted U.S. Healthworks and spoke to a physician there who informed her that the results were all negative. She then telephoned Trugero, who said she had just received the results and confirmed they were all negative, but told Plaintiff that the investigation would continue.

27. Plaintiff then immediately contacted Chris Slane, SEIU representative, and told him the drug test results were negative and wanted to know when she would be permitted to return to work. Slane said he would speak with Defendants' attorney, Brady Mitchell. He called

Page 6 of 11
COMPLAINT

Plaintiff and said he had done so and said Mitchell stated that the hospital was conducting more investigation and that individuals were being interviewed. Mitchell also told Slane that the hospital was prepared to make a lump sum payment offer in exchange for Plaintiff's resignation. Plaintiff refused and she had done nothing wrong.

28. On or about April 8, 2014, Plaintiff was contacted by Angela Meza, employed by Defendant DIGNITY HEALTH in Human Resources, and was informed of a meeting to be held with her, Trugero, Slane and Jeanne Morgan, Director of Emergency Care. No explanation was provided as to why Morgan was participating. Meza told Plaintiff that Julia Arceo, SEIU steward, would not be permitted at the meeting. Plaintiff was informed later, after Chris Slane had communicated Plaintiff's refusal to resign, that Mitchell denied her request to have her workers' compensation attorney present.

29. On or about April 11, 2014, Plaintiff was required to attend a meeting with Meza and Sterling, and Slane also attended. Meza stated that Plaintiff was being brought in because of some concerns with medication administration, possible diversion of narcotics and patient care. She had a list that she said was prepared by the Pharmacy department and said the hospital had conducted a medication audit for the period going back to August 17, 2013. Meza questioned Plaintiff regarding eleven different dates when medication was dispensed. As to each date, Meza asked if Plaintiff remembered giving the medications to the patient. Plaintiff did not remember any of the dates, except for one and told Meza that she sees a lot of patients and could not remember specific incidents as far back as 2013. She told Meza that she might remember if she saw the chart. Meza did not have the charts and only provided the patient MR numbers which were not sufficient for the union to be able to assess the allegations. After Meza had gone through the list, she ended the meeting.

30. On or about April 23, 2014, the SIEU filed a grievance on Plaintiff's behalf, alleging that Defendant DIGNITY HEALTH had violated the CBA by failing to return Plaintiff to work within fourteen days. The grievance cited violations of several articles of the CBA.

31. On or about May 25, 2014, after being rescheduled several times, a meeting was held with Meza and Morgan present, along with Plaintiff, whose request for the presence of

Arceo or Slane was denied by Mitchell. Slane and Nina Wells, another union steward, was permitted to wait in the hallway. Morgan told Plaintiff that she wanted her to know how serious "this is" and that there will be no bullying allowed or disrespecting of peers. She then gave Plaintiff a write-up, a second write-up and a final write-up. Plaintiff refused to sign each.

32. At that time and place, Morgan informed Plaintiff that she had made a report to the California Board of Registered Nursing ("BRN").

33. On or about June 3, 2014, the SEIU filed a grievance on Plaintiff's behalf, challenging the three disciplinary write ups, including the allegation that issuing three write-ups at one time violates the CBA because discipline must be progressive.

34. On or about May 26, 2014, Sterling agreed to return Plaintiff to work and she went back to work on May 27, 2014. Her suspension had lasted 57 days. As a result, Plaintiff did not receive Employer's matching contributions to her 402(k), and some pay differentials were not paid for her period of suspension. If she had not been suspended she would have worked two weekends, for which she lost pay. She also was not awarded her combined sick and vacation leave that she should have earned during her suspension, but it was ultimately reinstated after intervention by the SEIU.

35. On July 16, 2014, Plaintiff provided a doctor's note to Morgan prescribing 75% of one of her three weekly shifts be sedentary. Subsequently, her request for reasonable accommodation was denied and she was placed on involuntary leave without pay from July 17 to August 1, 2014.

36. On or about August 5, 2014, Plaintiff provided Defendant DIGNITY HEALTH with documentation that she was able to return to regular duty and returned to work on that date.

37. On or about April 9, 2015, Defendant DIGNITY HEALTH terminated Plaintiff's performance.

38. In terminating Plaintiff's employment, Defendant DIGNITY HEALTH retaliated against Plaintiff for asserting the right to work in a safe environment with proper ratios between nurses and patients; and Plaintiff has a right of action to recover all damages to be made whole for retaliation pursuant to Health and Safety Code §1278.5.

39. There is a causal link between Plaintiffs' protected activity and the adverse employment actions. Plaintiff had never been subjected to discipline in any form by Defendant DIGNITY HEALTH until after she made complaints regarding proper nurse to patient ratios and the patient safety concerns arising from improper ratios.

40. The arbitrator's finding that Defendant DIGNITY HEALTH did not have just cause to terminate Plaintiff's employment and the order to reinstate her employment back to the date of her unjust termination, acts as collateral estoppel against Defendant DIGNITY HEALTH in this action.

41. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages.

42. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress, and claims the same as damages in an amount subject to proof at the time of trial.

43. The acts taken toward Plaintiff were carried out by and/or ratified by managing agent employees of Defendant DIGNITY HEALTH acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to her of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

44. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiffs are entitled to recover their attorneys' fees and costs pursuant to Health and Safety Code §1278.5(g).

## Second Cause of Action
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

45. Plaintiffs reallege hereby incorporate by reference the foregoing paragraphs 1 through 11 and 13 through 43, as though fully set forth.

46. Defendant DIGNITY HEALTH's termination of Plaintiff's employment was an adverse employment action in violation of substantial and fundamental public policies declared by statutes of the State of California that were well-established at the time of Plaintiff's discharge to encourage patients, nurses, members of the medical staff, and other health care workers to notify government entities of suspected unsafe patient care and conditions in order to protect patients and in order to assist those accreditation and government entities charged with ensuring that health care is safe, and to prohibit a health care facility to discriminate or retaliate, in any manner, against any employee of the health care facility because that person (1) presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity, or (2) has initiated, participated in, or cooperated in an investigation or administrative proceeding related to the quality of care, services or conditions at the facility that is carried out by an entity or agency responsible for accrediting or evaluating the facility of its medical staff or a governmental entity.

WHEREFORE, Plaintiffs demands judgment against Defendants, as follows:

### For the First Cause of Action:

1. Compensatory damages for lost wages and benefits according to proof at trial;

2. Emotional distress damages according to proof at trial;

3. Penalties in the sum of $20,000 per willful violation according to proof a trial;

4. Punitive damages according to proof at trial;

5. For a judgment which will so far as possible eliminate the discriminatory effects of past as well as bar like retaliation in the future; and

6. Attorney fees and costs according to proof at trial.

For the Second Cause of Action:
1. Compensatory damages for lost wages and benefits according to proof at trial;
2. Emotional distress damages according to proof at trial; and
3. Punitive damages according to proof at trial;

For all causes of action:
1. Costs expended herein;
2. Prejudgment interest pursuant to Civil Code section 3287; and
3. Such other and further relief as this court deems just and proper.

LAW OFFICES OF SAMUEL F. GALICI
Attorneys for Plaintiff VERONICA FLORES

DATED: February 1, 2018   By: _____
                              SAMUEL F. GALICI

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all causes of action to which they are entitled by law to a trial by a jury of her peers.

LAW OFFICES OF SAMUEL F. GALICI
Attorneys for Plaintiff VERONICA FLORES

DATED: February 1, 2018   By: _____
                              SAMUEL F. GALICI

Page 11 of 11
**COMPLAINT**